## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Office for Planning and Architecture, Inc., and Bret Peters, | : : : : | |
| Plaintiffs, | : : | |
| vs. | : : | Civil Action No. _____ |
| City of Harrisburg and Wallace, Montgomery & Associates, LLP, | : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

### Complaint

Plaintiffs Office for Planning and Architecture, Inc. and Bret Peters, file this complaint against Defendants City of Harrisburg and Wallace, Montgomery & Associates, LLP.

## I.    Parties

1.    Plaintiff Office for Planning and Architecture, Inc. ("OPA"), is a corporation organized under the laws of the Commonwealth of Pennsylvania that maintains a principal place of business at 3001 North Second Street, Harrisburg, Dauphin County, Pennsylvania 17110.

2.    Plaintiff Bret Peters ("Peters") is an adult individual maintaining a principal residence in the City of Harrisburg, Dauphin County, Pennsylvania.

3.      Defendant City of Harrisburg ("City") is a municipal subdivision of the Commonwealth of Pennsylvania that maintains a principal office at 10 North Second Street, Harrisburg, Dauphin County, Pennsylvania 17101.

4.      Defendant Wallace, Montgomery & Associates, LLP ("Wallace, Montgomery") is a limited liability partnership organized under the laws of the State of Maryland that maintains a regular place of business at 10150 York Road, Suite 200, Hunt Valley, Maryland 21030.

5.      At all times defendants acted through their authorized employees or agents.

## II.    Jurisdiction and Venue

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1138(a).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant City of Harrisburg is located in the Middle District of Pennsylvania.

8.      This suit is brought under a federal statute and seeks both equitable relief and monetary damages.

## III.   Facts

9.      The averments of the foregoing paragraphs are incorporated herein by reference as if set forth at length.

10.     On or about May 1, 2015, OPA and the City entered into a written agreement for the provision of professional land use and planning services which incorporated certain additional terms stated in a customized version of the American Institute of Architects Standard Form of Architect's Services: Regional or Urban Planning, which document itself incorporated certain additional terms stated on a customized version of the American Institute of Architects Standard Form of Architect's Services: Regional or Urban Planning (collectively "Agreement").  A copy of the Agreement is attached as Exhibit A.

11.     The City in the Agreement agreed to pay OPA for its services in developing a new comprehensive land plan for the City.

12.     OPA rendered services under the Agreement by coordinating and facilitating a public planning process.

13.     Based on the public engagement information, OPA prepared draft chapters for a municipal comprehensive plan in accordance with the scope of work set forth in the City's request for proposal and consistent with the chapters required for a municipal comprehensive plan under the state municipal code, specifically preparing, editing, formatting and illustrating Chapters for Land Use; Natural & Historic Resources; Parks, Civic & Open Space; Housing; Mobility and Access; Utilities; Economic Development; and Integration ("Work Product").

3

14.     The Work Product was authored by Peters, with a non-exclusive license for use of the Work Product granted to OPA for performing under the Agreement with the City.

15.     In 2016, the City refused to pay for the Work Product as required under the Agreement, leaving a deficit in payment for services rendered as of November 15, 2019 in the amount of one hundred nine thousand seven hundred fifty-four and 84/100 dollars ($109,754.84).  An invoice of such date itemizing services and costs advanced by OPA to the benefit of the City is attached as Exhibit B.

16.     Subsequently, in 2019, the City publicly issued Request for Proposal 2019-3 ("RFP 2019-3") in which the City solicited proposals "to provide professional services to support the Planning Commission in completing the development of a long-range Comprehensive Plan for the City."  A copy of RFP 2019-3 is attached as Exhibit C.

17.     RFP 2019-13 specifically makes reference to, and incorporates, OPA's Work Product in violation of OPA's rights under the Agreement, stating, "In 2015 - the City engaged the services of a third-party consulting firm to assist in the public input process, prepare the comprehensive plan draft and review with the Planning Commission.  The work completed under that agreement resulted in a draft plan which has been vetted by the Planning Commission."  *Id*. § 2.

4

18.     The "third-party consulting firm" referred to in the request for proposal is OPA.

19.     As stated in RFP 2019-3, "This is not a proposal for full development of a comprehensive plan, instead it seeks services involve editing/revisions as requested by PC to existing document draft."  Exhibit C, Section 1.

20.     The reference to "existing document draft" is a reference to the Work Product.

21.     The antecedent Agreement between OPA and the City stated,

**ARTICLE 3  COPYRIGHTS AND LICENSES .**

§ 3.1 The Architect and the Owner warrant that in transmitting Instruments of Service, or any other information, the transmitting party is the copyright owner of such information or has permission from the copyright owner to transmit such information for its use on the Project. If the Owner and Architect intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions.

§ 3.2 The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and shall retain all common law, statutory and other reserved rights, including copyrights. Submission or distribution of Instruments of Service to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the reserved rights of the Architect and the Architect's consultants.

§ 3.3 Upon execution of this Agreement, the Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service solely and exclusively for the Project, provided that the

Owner substantially performs its obligations, including prompt payment of all sums when due, under this Agreement. The Architect shall obtain similar nonexclusive licenses from the Architect's consultants consistent with this Agreement. The license granted under this section permits the Owner to authorize the Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers, as well as the Owner's consultants and separate contractors, to reproduce applicable portions of the Instruments of Service solely and exclusively for use in performing services for the Project and for publication in the Comprehensive Plan or in connection therewith. If the Architect rightfully terminates this Agreement for cause as provided in Section 5.4, the license granted in this Section 3.3 shall terminate.

§ 3.3.1 In the event the Owner uses the Instruments of Service without retaining the author of the Instruments of Service, the Owner releases the Architect and Architect's consultant(s) from all claims and causes of action arising from such uses. The Owner, to the extent permitted by law, further agrees to indemnify and hold harmless the Architect and its consultants from all costs and expenses, including the cost of defense, related to claims and causes of action asserted by any third person or entity to the extent such costs and expenses arise from the Owner's use of the Instruments of Service under this Section 3.3.1.

§ 3.4 Except for the licenses granted in this Article 3, no other license or right shall be deemed granted or implied under this Agreement. The Owner shall not assign, delegate, sublicense, pledge or otherwise transfer any license granted herein to another party without the prior written agreement of the Architect. Any unauthorized use of the Instruments of Service shall be at the Owner's sole risk and without liability to the Architect and the Architect's consultants.

Exhibit A, pp. 5, 6.

22.     As stated in section 3.3 *supra*, "Upon execution of this Agreement,

the Architect grants to the Owner a nonexclusive license to use the Architect's

Instruments of Service solely and exclusively for the Project, provided that the

6

Owner substantially performs its obligations, including prompt payment of all sums when due, under this Agreement." *Id.*

23.     The City selected Wallace, Montgomery, an engineering firm, to do the work delineated in RFP 2019-3.

24.     Because the City has failed to pay for OPA's work product, the City does not hold the rights to its use, and Wallace, Montgomery has no right to use the same, whether originally or in derivative work.

25.     In issuing RFP 2019-3, the City infringed on OPA's copyright by employing OPA's work product under the Agreement for which it has not made payment.

26.     At all times, OPA has used the Work Product as Peters' licensee and is authorized to enforce Peters' copyright thereto.

27.     OPA is entitled to compensation for defendants' past infringement of OPA's Work Product.

28.     Current and ongoing infringement of OPA's Work Product by the City and Wallace, Montgomery must be enjoined.

29.     On December 20, 2019, counsel for OPA transmitted a letter to both defendants advising of infringement of OPA's copyright.  A copy of such letter is attached as Exhibit D.

30.     Effective November 18, 2019, Bret Edward Peters ("Peters"), president and fifty-one percent (51%) shareholder of OPA, had secured in his personal name federal copyright protection over the Work Product at U.S. Copyright Office No. TX 8-810-404.  A copy of the registration certificate for the Work Product issued by the U.S. Copyright Office is attached as Exhibit E.

31.     Unless enjoined by this Court, defendants will continue their course of conduct and wrongfully use, infringe upon, sell, and otherwise improperly profit from Plaintiffs' Work Product.

32.     As a direct and proximate result of defendants' acts, plaintiffs have already suffered irreparable damages and sustained loss profits.

33.     Plaintiffs have no adequate remedy at law to address all of the injuries that defendants have caused and intends to cause by their conduct.

34.     Plaintiffs will continue to suffer irreparable damage and sustain loss profits until defendants' actions as alleged above are enjoined by the Court.

## FIRST CAUSE OF ACTION
### Violation of Copyright Act
### 17 U.S.C. § 101 *et seq*.

35.     The Work Product is an original, copyrightable work under the Copyright Act, 17 U.S.C. § 101, *et seq*.

36.     Plaintiffs have complied in all respects with the Act and secured the exclusive rights in the Work Product of which Peters is the author by registration thereof with the U.S. Copyright Office.  Exhibit E.

37.     OPA through license from Peters holds non-exclusive rights, title, and interest in the copyright of the Work Product for use in performance under the Agreement and thereby enforceable against third-parties.

38.     Peters, as author of the Work Product similarly has a right to enforce his copyright against any infringing third party.

39.     The City and Wallace, Montgomery have infringed, and are infringing, the copyright of the Work Product by unlawfully reproducing and distributing identical copies of, and product derived from, the Work Product, in violation of the Copyright Act, 17 U.S.C. §§ 106 *et seq*.

40.     In the absence of injunctive relief, plaintiffs will have no adequate remedy at law as plaintiffs' damages will be irreparable.

41.     Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

42.     Plaintiffs are further entitled to recover from the City and Wallace, Montgomery the damages, including attorneys fees, they have sustained and will continue to sustain, and any gains, profits and advantages obtained by the City and Wallace, Montgomery as a result of the acts of infringement alleged above.

43.     At present, the historical value of such damages, gains, profits and advantages cannot be fully ascertained by plaintiffs.

44.     Irreparable damage will prospectively result to plaintiffs if an injunction is not issued.

WHEREFORE, Plaintiffs OPA and Bret Peters pray the Court to PERMANENTLY ENJOIN the City of Harrisburg and Wallace, Montgomery & Associates, LLP, from further infringing its copyrighted Work Product and award damages for historical infringement, including attorneys fees and costs of suit.

**METTE, EVANS & WOODSIDE**

/s/ Aaron D. Martin

By:     _____

Aaron D. Martin
PA Atty. I.D. No. 76441
3401 North Front Street
Harrisburg, PA 17110
(717) 232-5000 (phone)
(717) 236-1816 (fax)
admartin@mette.com

*Attorneys for Plaintiffs,*
*Office for Planning and*
*Architecture, Inc. and*
*Bret Peters*

Date: June 5, 2020.